CHARLES A. MOORE v. W. O. WOLFE and JULIA E. WOLFE, his wife.

(Decided May 11, 1898.)

*Action on Contract—Feme Covert—Liability of Married Woman on Contract—Plea of Coverture—Jurisdiction of Appeal from Court of Justice of the Peace.*

1. The general rule being that a married woman cannot make a contract binding upon her, it is the duty of a plaintiff seeking to enforce a liability under an exception to such general rule to establish the exception.

2. Where there are no written pleadings in a Justice's Court the summons constitutes the complaint, and if a summons issues from a Justice's Court against "W and J, his wife" for a demand due by contract, her coverture sufficiently appears "from the pleadings."

3. A *feme-covert* sued on contract should be allowed to plead her coverture.

4. The Superior Court acquires no jurisdiction on appeal from a Justice's Court of an action on the contract of a *feme covert* which, being enforceable only in equity, could not be maintained in the Justice's Court.

5. Where a *feme covert* is entitled to the defense of coverture in an action against her, it may be made by the Court *ex mero motu.*

6. Where the record shows that the defendant is a *feme covert* the trial should proceed, whether the plea of coverture is interposed or not, and, if the proof brings the case within the exceptions to the general rule as to the liability of married women on contracts, the plaintiff should have judgment.

CLARK, J., dissents *arguendo.*

CIVIL ACTION commenced before a Justice of the Peace and tried before *Timberlake, J.,* and a jury, at July, 1897, Special Term of BUNCOMBE Superior Court. The facts appear in the opinion. Judgment was rendered for the plaintiff against W. O. Wolfe but refused as to the *feme* defendant and plaintiff appealed.

MOORE, v. WOLFE.

*Messrs. Fred Moore* and *Shepherd & Busbee* for plaintiff (appellant).

No counsel *contra*.

FURCHES, J.: This action was commenced before a justice of the peace to recover a sum less than $200, alleged to be due the plaintiff for services as an attorney.

The summons was in favor of the plaintiff, and the command therein to the officer was "To summons W. O. Wolfe and *wife*, Julia E. Wolfe to appear" etc. Defendants denied owing plaintiff anything and pleads counter claim and set off.  .

Plaintiff recovered judgment and defendants appealed to the Superior Court. In that court Julia E. Wolfe asked to be allowed to plead her coverture, but was not allowed to do so. The *feme* defendant then asked the court to charge the jury that plaintiff could not recover against her, and this prayer was given. Verdict and judgment for plaintiff against W. O. Wolfe, the husband, but verdict and judgment for the *feme* defendant Julia E. Wolfe, and plaintiff appealed.

The error assigned is the instruction to the jury that they could not find a verdict against the *feme* defendant.

Where there are no written pleadings in a justice's court, the summons constitutes the complaint (*Allen* v. *Jackson*, 86 N. C., 321) and there seems to have been no written pleadings in this case. The summons is "To answer the complaint of the above named plaintiff for the non-payment of the sum of $200 . . . . . due by *contract* and demanded by said plaintiff." If plaintiff had recovered against the *feme* defendant, his judgment would have been a personal judgment founded on her *contract* and promise to pay the plaintiff. The general rule is that a married woman cannot make a contract

binding upon her.  *Code*, Section 1826.  It is true that there are exceptions to this general rule, in which she can; but as they are exceptions to this general rule, the party claiming the benefit of the exception must establish the exception.  This was not done here, and it brings the case down to a matter of pleading.

If the *feme* defendant had plead her coverture before the magistrate or had been allowed to do so in the Superior Court, there would be no question as to the correctness of the judgment, and this appeal would not be here.

In *Green* v. *Ballard*, 116 N. C., 144, it is held that whenever it appears from the pleadings that the defendant is a *feme covert*, no personal judgment can be rendered against her.  This opinion seems to be sustained by *Pippen* v. *Wesson*, 74 N. C., 437, and other cases. *Dougherty* v. *Sprinkle*, 88 N. C., 300, holds that no personal judgment can be given against a *feme covert* upon her contract; that she has no power to contract, and any contract she may attempt to make is not voidable, but is absolutely void; that where she has separate estate, she may make this liable to the payment of debts.  But this is done upon equitable grounds and upon equitable principles, and not upon the obligation of her contract, which in law is void.  The case of *Dougherty* v. *Sprinkle* commenced before a justice of the peace, as this did, in a court that had no equitable jurisdiction; the plaintiff could not recover.  This case of *Dougherty* v. *Sprinkle* is in harmony with the well considered opinion in *Pippen* v. *Wesson, supra*, and the authorities there cited, that the *feme* must not only pledge her separate property, but that it must also appear that it was for her *benefit* or the benefit of her estate. And it would seem that as she is not bound by the *legal*

obligation of her contract, and that it must be enforced in equity and upon equitable principles, if enforced at all, it must be *for her benefit*, as it would be inequitable to take her property for the benefit of some one else. Indeed, it would seem difficult to see how this could be done in equity, leaving out of view her personal obligation. It cannot be done upon the ground of fraud, as it can be no fraud for a married woman not to do what the law says she shall not do. This protection of the law was thrown around her for the purpose of protecting her property from liability for the benefit of others. But the doctrine of *Pippen* v. *Wesson*, *Dougherty* v. *Sprinkle*, and that line of cases seems to have been abandoned in *Flaum* v. *Wallace*, 103 N. C., 296, which has since been regarded and followed as the law. And it may be that it has become too much involved in the business transactions of the State to be reversed now, even if it should be considered incorrect upon principle. This doctrine has nothing to do with the enforcement of executed contracts, and only applies to executory contracts.

It appears in the summons in this case, which must be taken as the complaint, that the defendant, Julia E. Wolfe was a *feme covert*, and no personal judgment could be rendered against her under *Green* v. *Ballard*, *supra*. The action having commenced before a justice of the peace, and it appearing that the defendant Julia is a *feme covert*, the justice had no jurisdiction as to her; and the case coming to the Superior Court by appeal from the justice's court, the Superior Court had no jurisdiction the justice did not have. And no judgment could be rendered against the *feme* defendant. *Dougherty* v. *Sprinkle*, *supra*.

It appearing to the court by the summons, which

is the complaint in this case, that the defendant Julia was a *feme covert*, she might make this defence by answer or by demurrer, written or *ore tenus*, or the court might make it for her *ex mero motu*. The defendant's asking to be allowed to amend her answer by inserting this defence and then asking the court to charge the jury that they could not find a verdict against her, was in effect a demurrer *ore tenus*. And the judge's charge that they could not find a verdict against her, whether considered as given *ex mero motu* or in answer to the prayer of the defendant, was correct. *Baker* v. *Garris*, 108 N. C., 218.

While the judgment of the court in *Green* v. *Ballard*, *supra*, is correct and is based upon the general principle governing cases against married women, it may be, that the unrestricted language used in the opinion is not entirely accurate. And while the general rule is, as laid down in that opinion, that a personal judgment cannot be given against a *feme covert*, there are exceptions to this general rule, as will be found in Sections 1826, 1828, 1831, 1832 and 1836 of *The Code*, in which *femes covert* may bind themselves by contract upon which personal judgments may be had. So, it is not entirely accurate to say that, where it appears of record that the defendant is a *feme covert*, no personal judgment can be had against her.

But the rule should be that, where it appears from the record that the defendant is a *feme covert*, the trial should be proceeded with as if this defence was pleaded, whether it is actually pleaded or not; and if the plaintiff brings his case within the exceptions, or in other words if he show that he is entitled to judgment notwithstanding the coverture of the defendant, then he should have judgment, otherwise he should not.

We see no error and the judgment appealed from is affirmed.

Affirmed.

CLARK, J., dissenting: *The Code*, Section 178, provides that a married woman can sue and be sued. This contemplates that a valid judgment can be rendered against her. *The Code*, Section 424(4), provides that judgment may be given against a married woman "in the same manner as against other persons." *The Code*, Section 443, provides that an execution can issue against a married woman and be levied upon her individual property. This, of course, could not be done unless a valid judgment against her could be obtained. The Constitution, Article X, Section 6, provides that the property of a married woman "shall be and remain the sole and separate estate and property of such female." This gives point to the above provisions allowing her to be sued and judgment to be rendered against her as "against other persons" and that execution shall issue against her property.

*Pippen* v. *Wesson*, 74 N. C., 437, recognized that the contract of a married woman was binding on her if it was made for her benefit. In the present case the plaintiff testified that "he was employed by both the defendants to attend to certain legal business for the *feme* defendant; that in pursuance of such employment he did so; that the business transacted in consequence of said employment was for the benefit of the separate estate of the *feme* defendant and that the fees charged for his services were reasonable and just." The *feme* defendant did not plead her coverture before the justice and was refused permission to plead it on appeal. The court,

however, charged that in no aspect of the evidence could a verdict be rendered against the *feme* defendant.

This was in substance holding that, since it appeared from the summons that the *feme* defendant was a married woman (her husband being a co-defendant as required), the law from that fact itself rendered her exempt from judgment, even for services rendered for the benefit of her estate and at the request of her husband and herself. If so, why is it expressly provided that she can be sued, that judgment can go against her and that execution can issue against her separate property? There is not a shred of a statute to sustain such "privilege of sanctuary." That judgments can be rendered against married women and are as binding as against any one *sui juris* has been the ruling of this court as well as the express letter of the statute law. *Green* v. *Branton*, 16 N. C., 504; *Vick* v. *Pope*, 81 N. C., 22; *Grantham* v. *Kennedy*, 91 N. C., 148; *Neville* v. *Pope*, 95 N. C., 346. The services rendered the married woman here were as much a "necessary" as that for which the wife was held liable to judgment in *Bazemore* v. *Mountain*, 121 N. C., 59, and the participation of the husband with the wife in the contract and that it was for the benefit of her estate was shown. The written consent is not required when he is present participating and acting as agent for his wife, for he could not give a written power of attorney to himself.

In practice it will be found to work a serious hardship upon married women if they cannot be held liable for services rendered or money loaned for the benefit of themselves or their separate estate, unless a special charge or privy examination is shown. No statute requires this, and no decision prior to *Flaum* v. *Wallace*, intimated it. *The Code*, Section 1826, requires nothing in

any case beyond the "written consent of the husband."
As no vested rights can accrue under the artificial rule
invalidating contracts for the benefit of married women,
which has grown up under the last named decision, it
is the better plan to return at once to the plain statute
as ┌the law-making power has written it.